Robert T. Coffin, County Atty., Malcolm L. Lyons, Law Student, Portland, for plaintiff.

Basil A. Latty, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

Tried by jury on an indictment under 17 M.R.S.A. § 2103 charging the breaking and entering in the nighttime of the store of one George Litrocapes and the commission of larceny therein, the defendant was found guilty and has appealed from the judgment of conviction. The errors assigned and argued are, (1) to the admission of evidence at trial, (2) to the instructions to the jury and (3) to the denial of a motion for a new trial.

We summarize the evidence. Following a view by the jury, the State presented as witnesses Mr. Litrocapes, the owner of the store, two neighbors who watched the burglars' nocturnal activities, and three officers of the law. The defendant did not take the stand. On March 20, 1969, about 11:30 p. m. Mrs. Anastasia Nolette was sitting at her third floor living room window overlooking the Victory Market, so-called, situated on the other side of Cumberland Avenue in Portland. She observed two young men peeking in the windows of the market which was brightly lit up even though it had been closed for the night since 11:00 p. m. One of the two men had blond hair and a light coat while the other had dark hair and dark clothing. After the blond one had pushed open the door and both had entered the market, Mrs. Nolette called the police. Prior to the arrival of the police, she followed the activities of the burglars inside the market, testifying that they repaired to the area of the beer refrigerator and the cigarette racks. Both young men within a short time came out loaded with full plastic bags. Her daughter, who was also looking on from the same window, corroborated her mother in practically all particulars and added that the loot resembled plastic bags of beer, with which she was familiar. It was snowing at the time and there was fresh snow on the ground but the weather conditions were not those of a blizzard. The women described the course of the two men as they made their exit from the market, traversing Cumberland Avenue midway before they reached Pearl Street. The police were on the scene within minutes; they were informed of the thieves' escape route, Officer Piawlock getting a glimpse of two persons rounding the corner of Cumberland Avenue and Pearl Street on the run. In fresh pursuit, the officers noticed the dual sets of footprints in the snow, commencing at the market on Cumberland Avenue, then crossing the Avenue and thereafter rounding the corner of Pearl Street. The footprints led to a building at 152 Pearl Street situated some 150–200 yards from the corner of Cumberland Avenue. Officer Piawlock again spotted the culprits entering the yard and climbing over a fence. His shouts to stop for the police went unheeded and his attempt to corner them by circling the block went for naught as he lost the footprints (then a single set) which faded away on the wet pavement of Myrtle Street. Officer Fournier, on the other hand, had focussed his attentions towards a driveway located at a higher grade level than the area where Officer Piawlock concentrated his efforts. Alerted by sounds from the other side of the fence, Officer Fournier stood in waiting while the defendant Small climbed back over the fence toward the officer who placed him under arrest. In the immediate vicinity of the fence and lying in the snow along the two sets of footprints which led to the fence, there were several plastic bags each containing five bottles of Ballantine beer; there were also five loose bottles of beer, several paper bags containing packages of cigarettes and some loose packages of cigarettes; all this evidence was gathered in by Officer Fournier

and turned over to Detective Coppersmith of the Portland Police Force.

1. Did the Court below commit reversible error in its rulings on the admissibility of evidence?

■ The presiding Justice admitted over objections the plastic bags of Ballentine beer and the 5 loose bottles, as well as the paper bags of cigarettes and the loose packages, even though Mr. Litrocapes whose market was burglarized could not testify that the cigarettes in evidence were actually his but merely stated that some cigarettes of the same brand were missing from his store, and notwithstanding the fact he could not tell whether any of his Ballentine beer had been stolen. It was essential for the State to prove that the defendant Small did steal Mr. Litrocapes' beer and cigarettes as alleged in the indictment. But this necessary fact may be proven by circumstantial evidence the same as any other fact. The chain of circumstantial evidence from the time of the original breaking and entering of the market to the time of the defendant's arrest is unbroken, and inevitably leads to the conclusion beyond a reasonable doubt that the defendant did steal Mr. Litrocapes' beer and cigarettes. The thieves were seen carrying out plastic bags of beer. The footprints led directly to the defendant and to goods stolen from the market. Under the circumstances of hot pursuit present in the instant case and the defendant's arrest in close proximity to the loot as he was backtracking over the fence to avoid capture in the middle of a snowy night, together with the initial corroborative testimony of eye witnesses of the breaking, entering and pilfering of goods out of the market, the jury was warranted in concluding beyond a reasonable doubt that the Ballentine beer and cigarettes were the property of Mr. Litrocapes. That a burglary and larceny had occurred was clearly established. That the owner could not identify the property stolen for want of personal marks or other identifying features does not under the circumstances of the instant case preclude the jury finding that Mr. Litrocapes' property was stolen. The presiding Justice under the circumstances was justified in ruling the State's evidence relevant and admissible.

■ The indictment avers ownership of the stolen goods in Mr. Litrocapes. In an offense in any way relating to personal estate, if the evidence at trial establishes that the property, at the time of the offense, was in the actual or constructive possession of the person described in the indictment as the owner thereof, it is sufficient proof of ownership by that person and there is no legal variance. 15 M.R. S.A. § 752. The testimony in the instant case is conclusive beyond a reasonable doubt that the stolen beer and cigarettes came from the Victory Market owned and operated by Mr. Litrocapes, from whose possession they were taken when the place was burglarized by the defendant and his companion.

Such is also the rule in other jurisdictions. Commonwealth v. Schultz, 1951, 168 Pa.Super. 435, 79 A.2d 109, cert. den. 342 U.S. 842, 72 S.Ct. 71, 96 L.Ed. 636; People v. Williams, 1966, 75 Ill.App.2d 342, 221 N.E.2d 28; Richardson v. State, 1966, 247 Ind. 610, 220 N.E.2d 345.

"[T]ires stolen from the warehouse used by a company in which to store its goods answered the description [of the indictment] of being its property, within the meaning of the criminal law." Donnelly v. State, 194 Ind. 136, 142 N.E. 219.

■ Ownership need not necessarily be established by direct proof; it may be proven by circumstances and inferences as well as by direct evidence. State v. Johnson, 1930, 210 Iowa 167, 230 N.W. 513; Coppler v. State, 1931, 52 Okl.Cr. 275, 4 P.2d 700; Lovejoy v. State, 1936, 130 Neb. 154, 264 N.W. 417; Wallis v. State, 1969, 245 Ark. 1024, 436 S.W.2d 273. See also, 52A C.J.S. Larceny § 134.

### 2. Instructions to the jury.

■ The defendant claims that the presiding Justice erroneously omitted to instruct the jury that in order for them to find the defendant guilty of breaking, entering and larceny, they must be satisfied beyond a reasonable doubt that George Litrocapes had a proprietary interest in the building where the breaking and entering occurred. The record discloses that counsel for the defendant made only one request respecting jury instructions and that request was fully satisfied by the Court. No other request was made and no objections were taken to the charge as given. Rule 30(b), M.R.Crim.P. provides that "[n]o party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." A party may not complain of omissions in the charge unless he has called to the attention of the Court these omissions of which he complains prior to the jury's retirement for purposes of deliberations; by his inaction, the party is deemed to have waived any objection and if such a grievance is raised for the first time on appeal, it comes too late. State v. James, 1965, 161 Me. 17, 206 A.2d 410. An exception to this rule is made only where the error complained of is so highly prejudicial and so taints the proceeding as virtually to deprive the aggrieved party of a fair trial. State v. Langley, 1968, Me., 242 A.2d 688. In the instant case there is no showing of either error or prejudice to the defendant.

■ As with stolen goods, 15 M.R.S.A. § 752 decrees that in an offense in any way relating to real estate such as breaking, entering and larceny, establishment at the trial of actual or constructive possession by the person stated in the indictment to be the owner thereof or proof that he has a general or special property in the whole or in any part of such estate, is sufficient evidence of the fact of ownership. Mr. Litrocapes positively testified that he was the owner at the Victory Market at the time of the burglary and that his store, the real estate herein involved, is located at the corner of Cumberland Avenue and Wilmot Street in Portland. Such evidence was ample proof of ownership under the statute.

■ A burglary indictment must be sufficiently specific as to ownership to enable the defendant to adequately prepare his defense and to protect him from subsequent prosecution for the same offense. It further serves to negative any right of entry in the accused as well as to establish the identity of the premises broken into. But in burglary prosecutions, under the provisions of 15 M.R.S.A. § 752, the State need not necessarily plead and prove ownership by averment and proof of the legal owner of the fee simple or record title of the burglarized building or other property broken into. The reference statute equates ownership with actual or constructive possession of the premises or with a general or special property interest in the whole or any part thereof. The State need only plead and prove occupancy of or possession in the party whose occupancy or possession is rightful as against the accused burglar. State v. Klein, 1938, 195 Wash. 338, 80 P.2d 825; State v. Johnson, 1963, 120 Ohio App. 191, 201 N.E. 2d 791; Hackley v. State, 1965, 237 Md. 566, 207 A.2d 475; Richardson v. State, 1966, 247 Ind. 610, 220 N.E.2d 345; People v. Knox, 1968, 98 Ill.App.2d 270, 240 N.E.2d 426.

The defendant further complains that the Court erred in giving the following instruction to the jury:

"Whether or not it was with the intention to permanently deprive the owner of his property is a question of fact which you must determine. That kind of problem raises some knotty legal issues. *And again it is not material, I*

*mean this instruction is not material to this case."* [Emphasis supplied.]

 The correctness of a charge is not to be determined from mere isolated statements extracted from it, without reference to their connection with what precedes, as well as that which follows. State v. Morin, 1953, 149 Me. 279, 100 A.2d 657; State v. Warner, 1967, Me., 237 A.2d 150, 159. The reference phrase in the charge standing alone, would be open to objection, but taken in connection with other parts of the charge and viewed in the light of the other instructions on the point of intent which were full and clear, we are satisfied the jury was in no way misled and correctly understood that, before the defendant could be convicted of larceny, the State had to prove beyond a reasonable doubt not only the taking and asportation of the property of George Litrocapes, but also that the defendant had the intent to permanently deprive Mr. Litrocapes of his property.

 A reading of the whole charge convinces us that there was no manifest prejudicial error. The defendant in this instance also failed to comply with the requirements of Rule 30(b), M.R.Crim. P. at the trial level; he has no appellate standing to claim aggrievement in the Court's instructions to the jury.

3. *Denial of motion for new trial.*

 The defendant grounded his right to a new trial upon the usual reasons, that the verdict was manifestly against the evidence and against the law. The record disproves this. The jury was warranted in believing and finding beyond a reasonable doubt that the defendant was guilty as charged. A contrary verdict would have been a miscarriage of justice.

The entry will be

Appeal denied.

POMEROY, J., did not sit.

Supreme Judicial Court of Maine.

